## Lippincott Estate

*Thomas S. Weary*, for accountants.

*Seth W. Watson, Jr.*, for Philadelphia Association for the Blind.

*Louis Marion* and *Harry W. Kurtzman* for Commonwealth.

KLEIN, P. J., May 13, 1959.—Marie Gregg Lippincott died on December 28, 1932, leaving a will and codicil, by item sixth of which, if her husband should have predeceased her, which he did, she devised and bequeathed her residuary estate, including any over which she might have power of appointment by will, to her executors, in trust, for the following uses and purposes:

"1. The Trustees shall at the expiration of each calendar year distribute the income for the purpose of paying entrance fees into homes and institutions for the blind or other homes in the State of Pennsylvania, of persons qualified as hereinafter provided, which entrance fees are to pay for their maintenance and care for life, and to be used for as many applicants as the funds in hand will cover.

"2. In the case of a couple, man and wife, either one or both of whom may be without sight, the Trustees are authorized to make the payment of entrance fees for both to provide that they are not separated but

entered in one institution so that they may not be deprived of each other's companionship.

"3. The income shall be used for adult blind only, not under fifty years of age, except, however, should the Trustees be notified of any person without sight within the State of Pennsylvania over the age of eighteen years who is in addition, definitely invalided, that is to say, helpless in most ways and unable to do work of any kind, such person shall be eligible to assistance.

"4. The Trustees are to cause investigation to be made of applicants in order to make a selection of worthy cases, especially as provided in subdivision 3 above.

"5. There shall be no distinction made as to persons selected for benefits hereunder as to race, creed or color.

"6. All payments for entrance fees must be verified to the satisfaction of the Trustees and paid by the Trustees and the cancelled check or receipt therefor shall be a complete discharge of the Trustees.

"7. The Trustees shall, at the commencement of the trust and on the first of each year following, notify all organizations within the State of Pennsylvania interested in work for the relief of the blind as to the function of the Fund and how assistance may be secured therefrom.

"8. In order that there shall be applicants at all times for the benefits to be derived from this Fund, the Trustees are authorized to advertise quarterly and are required to advertise once annually in at least three newspapers of semi State-wide circulation. It is suggested, for the guidance of the Trustees, that newspapers be selected in Philadelphia, Williamsport and Pittsburgh. The Trustees are authorized in their discretion to further advertise from time to time in such magazines for the blind as may be available, or in

such other manner as the Trustees shall deem desirable. A suggested form of the advertisement which shall appear follows: 'Blind people over fifty years of age desiring to locate in a home or institution for the rest of their lives can secure assistance in defraying admission costs to same from the Jesse O. and Marie Gregg Lippincott Fund for Blind Relief by applying to the Girard Trust Company or Morris Duane, Esq., Philadelphia, Pennsylvania, Trustees of the Jesse O. and Marie Gregg Lippincott Fund for Blind Relief (or the agent selected by them).'

"9. In the event there should be income remaining at the end of each calendar year not allocated to applicants for admission to institutions and homes, the Trustees are authorized to pay such excess income to such blind persons, whether men or women, who may apply for the purpose of starting them in business, the amounts advanced ranging from a minimum of fifty dollars ($50.) to a maximum of three hundred dollars ($300) per person. The Trustees shall advance such amounts without charging interest or placing the man and/or woman so helped under obligation of any kind as to repayment, as such advancements are to represent gifts. If any person so aided should fail to be successful in his or her first venture, such person may, in the discretion of the Trustees, be given a second chance if he or she so requests. In the event that there is still an excess of income the Trustees are authorized to expend it for the benefit of blind persons in such manner as they in their sole discretion shall determine.

"10. Should at any future time either the Government of the United States or the Commonwealth of Pennsylvania or both undertake the care and maintenance of all the blind within the State of Pennsylvania, or of such cases as would come under the provisions set forth in this my Will, then in such case the Trustees

are authorized to pay the income as requested to such blind persons, whether men or women, for the purpose of starting them in business, the amounts advanced ranging from a minimum of fifty dollars ($50.) to a maximum of three hundred dollars ($300) per person. The Trustees shall advance such amounts without charging interest or placing the man and/or woman so helped under obligation of any kind as to repayment, as such advancements are to represent gifts. If any person so aided should fail to be successful in his or her first venture, such person may be given a second chance if he or she so requests. In the event there is still an excess of income the Trustees are authorized to expend it for the benefit of blind persons in such manner as they in their sole discretion shall determine."

A copy of the will and codicil, certified by counsel to be a true and correct copy, is annexed hereto.

The fund presently accounted for was awarded to the present accountants by adjudication of this court, dated November 4, 1942, and the occasion of the filing of the present account is stated to be the resignation of trustees and appointment of substituted trustees.

At the audit there was presented to the auditing judge a petition for the discharge of the present trustees and the appointment of Philadelphia Association for the Blind, Inc., a Pennsylvania nonprofit corporation, as substituted trustee, with certain directions as to the modification of the terms of the trust, particularly as to the necessity for advertising annually under the provisions of Item sixth (c) (8) of the will, and considerable testimony was presented to the auditing judge in support of the prayer of the said petition.

This case furnishes a classic example of the problems which arise when nobly inspired but impecunious testators create grandiose and wholly impractical trusts

with their limited funds. The principal of this trust had a value of approximately $5,000, when it was received by the trustees in 1933. Through prudent management, and with the assistance of the surging inflationary pressures which have engulfed our nation's economy, its value has increased to about $17,000. Even this enhanced corpus would have been much too small 25 years ago to warrant the creation of the ambitious plan contemplated by decedent. Today, with the drastically reduced purchasing power of the dollar, it is woefully inadequate.

An examination of the will discloses that the general purpose of the trust is to aid blind persons. The income can be expended in: (a) Paying admission fees for couples, when one or both of them are blind, into institutions and homes for the blind; (b) making small loans to blind persons to aid them in setting themselves up in business; or (c) applying the income for the benefit of blind persons in such manner as the trustees in their sole discretion shall determine.

When we consider the many responsibilities placed upon the trustees in administering this small trust, its impracticability comes into sharp focus. The average income which this fund can be expected to produce is approximately $750 a year. The trustees' joint compensation for adminstering the trust would be about $37.50 annually. With these miniscule earnings, and for this negligible compensation, they are expected to carry out the ambitious program defined by testatrix.

From the testimony of Mr. Duane it is evident that the trustees have been unable to find qualified applicants who wish to enter homes. He testified:

". . . we inserted a few advertisements, and the situation changed because of the tremendous increase in the amounts paid out of state and federal funds for blind persons. Although there were several advertise-

ments here and in Pittsburgh stating that these funds were available, there was a complete lack of applicants, and we have accumulated at the moment about $3,000 of income."

With respect to the trustees' efforts to assist persons to go into business, Mr. Duane said:

"Although we tried, it was difficult for the Girard and me to find people who wanted $300 loans to start a business, because a will drawn in 1932 stating that you could start a business with $300 is hardly applicable in 1958."

Mr. Branin, Senior Trust Officer of the Girard Trust Corn Exchange Bank, the corporate cotrustee testified:

"A. There is very little that I can add to what Mr. Duane has said. The fact that we have not had an applicant for admission to a home since 1953. I know that there are existing vacancies in homes for the blind, notwithstanding the fact that we have funds here available to pay the admission charge. I am told that one of the reasons for it is that with the blind pension and other benefits available to the blind, they are able to and would prefer to maintain an existence outside of a home. I do not say that there may not be applications in the future, but our applicants have substantially dried up in the last six years."

Moreover, tremendous changes have taken place generally in the social concepts of the people of the United States in the last quarter of a century. This is equally true in the area of service to the blind. The assistance granted to the blind has been increased considerably and every effort is made to keep blind people in their own family groups rather than in institutions. Testatrix's testamentary plan runs counter to the accepted modern trend in caring for the blind.

The present case differs in important respects from the usual situation in which the sole responsibility of

the trustees is to invest the corpus of the trust and pay the income to designated beneficiaries. In addition to the usual duties of trustees, the fiduciaries in this case are obliged to assume many active duties normally performed by social service organizations staffed by competent, trained social-service workers.

The Philadelphia Association for the Blind, Inc., formerly known as The Pennsylvania Association for the Blind (Philadelphia Branch) is a multi-purpose organization whose goal is to serve the blind in whatever way its funds permit. Thomas A. Benham, a member of the faculty of Haverford College, and chairman of the board of the association for the past eight years, testified:

". . . We have a social service department, an employment service department, recreation centers and boarding homes for blind people, and a nursery school for pre-school blind children. We also have an industrial division which employs blind people at making rugs, a wood-working shop for the making of cabinets and racks, an industrial department, a textile department, and an electronics division for the making of electronic record players for the Library of Congress. We also have a sales department for house-to-house canvassing for the sale of blind-made goods. I think these activities represent the scope of the functions of the Philadelphia Association for the Blind."

The association also operates a boarding home at 3515 Powelton Avenue for housing blind people, both men and women. It also operates vending stands in which blind people are employed. On occasions they assist blind persons to set up private businesses of their own.

Mr. Benham stated, further:

". . . the Philadelphia Association for the Blind is, I hope, becoming a by-word in Philadelphia to the end

that when blind people need assistance they think in terms of the Philadelphia Association for the Blind, so that there is no need really to advertise that we are ready and willing to help in some particular way. We hope the blind people will come to us when they want help, and this is growing all the time. Of course, it is our aim that they should be very familiar with our services so that any time a blind person needs assistance he knows where to come and get it."

There cannot be the slightest doubt that the Philadelphia Association for the Blind, Inc., is one of the outstanding organizations in the community devoted primarily to the care of the blind.

Girard Trust Corn Exchange Bank is one of the leading trust companies in the United States. It is operated by a staff of experts in all fields of banking, investments, estate planning and trust administration. It maintains several large common trust funds which make it possible for each estate, regardless of size, to enjoy the advantages of a carefully selected, diversified portfolio of investments. It is, however, completely lacking in social-service facilities. On the other hand, the Philadelphia Association for the Blind is fully equipped to handle the social-service problems of the blind, but is not geared to the expert administration of trust investments. Neither of these agencies, alone, can fully meet all of the requirements of this small but complex trust. Therefore, to accede to the trustees' original request to discharge the present trustees and to appoint the association, as substituted trustee, would serve the social service requirements of the trust at the expense of the administration of its financial problems.

The auditing judge has therefore suggested, and his suggestion has been approved by all parties in interest, that: (1) The resignation of Morris Duane, the indi-

vidual trustee be accepted, but that the Girard Trust Corn Exchange Bank remain as sole trustee; (2) that all of the income produced by the trust be delivered to the Philadelphia Association for the Blind to be used in such manner as its directors, in their discretion, deem best calculated to comply with testatrix's wishes and carry out her directions; (3) that the Philadelphia Association for the Blind make a report to the corporate trustee annually of the manner in which the income has been spent by it; and (4) that the Girard Trust Corn Exchange Bank file an account of its administration of the trust and the expenditures made by the association, with the court once every 10 years, unless directed to do so sooner by the court.

And now, May 13, 1959, the account is confirmed nisi.